**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF**
**OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DONALD POJMAN, M.D.,** | : | |
| 2303 Fairfax Rd. | : | |
| South Charleston, WV 25303 | : | Case No.: 2:20-cv-4543 |
| | : | |
| Plaintiff, | : | JUDGE |
| | : | |
| vs. | : | MAGISTRATE JUDGE |
| | : | |
| **FRANKLIN COUNTY** | : | |
| **CORONER'S OFFICE,** | : | |
| 520 King Avenue | : | **Jury Demand Endorsed Hereon** |
| Columbus, OH 43201 | : | |
| | : | |
| c/o Ron O'Brien | : | |
| Franklin County Prosecutor's Office | : | |
| Civil Division | : | |
| 373 South High St., 13th Floor | : | |
| Columbus, OH 43215 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Donald Pojman, M.D. ("Plaintiff") and proffers this Complaint for damages against Defendant Franklin County Coroner's Office ("Defendant").

## JURISDICTION AND VENUE

1.      This action is brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112"), and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2610, *et seq.*

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction over Plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

1

3.     This Court also has jurisdiction over Plaintiff's claims under the statutory laws of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4.     Venue is proper pursuant to 28 U.S.C. § 1391, because Plaintiff entered into an employment relationship with Defendant and performed his job duties for Defendant in Franklin County, Ohio in the Eastern Division of the Southern District of Ohio, and Defendant is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

5.     Plaintiff Donald Pojman, M.D. is an individual, a United States Citizen, and a resident of South Charleston, West Virginia.

6.     Defendant Franklin County Coroner's Office is registered to do business in Ohio and conducts business in Franklin County in the Eastern Division of the Southern District of Ohio.

7.     At all times relevant herein, Plaintiff was an "employee" of Defendant as that term is defined by the ADA, the FMLA, and Ohio law.

8.     At all times relevant herein, Defendant was an "employer" as that term is defined by the ADA, the FMLA, and Ohio law.

## FACTUAL BACKGROUND

9.     Plaintiff is a Forensic Pathologist. He began his employment with Defendant in or around August 2014 in the role of Deputy Coroner.

10.     In or around late 2016, Plaintiff was promoted to the role of Chief Deputy Coroner.

11.     In both roles, Plaintiff performed the same job duties. These included: performing autopsies; visiting crime scenes to examine evidence; determining the cause and manner of death; communicating with law enforcement, attorneys, and families; and preparing reports, among other things.

2

12.     Plaintiff was an excellent employee, and he consistently received positive feedback on his work performance. Throughout his career with Defendant, Plaintiff regularly carried the largest workload among the Deputy Coroners employed by Defendant, and he did not receive any disciplinary action.

13.     Plaintiff is an individual with a disability as defined by the ADA and Ohio law. Plaintiff suffered a retinal detachment in his left eye in or around August 2016. Plaintiff underwent a series of ocular surgeries to correct this condition, but he ultimately suffered a near-complete loss of vision in his left eye beginning in or around February 2018.

14.     Defendant was aware of Plaintiff's disability; Plaintiff informed Defendant of his condition and need for time off to undergo surgery during this timeframe, and after Plaintiff lost vision in his left eye, he would occasionally wear an eye patch over his left eye while working.

15.     Aside from his post-operative periods, Plaintiff continued performing his job duties on a full-time basis with the following self-imposed reasonable accommodations in place:

      a.     Plaintiff used scissors, rather than a scalpel, to perform eviscerations (though eviscerations were typically performed by technicians, which was the standard of practice in Defendant's office);

      b.     Plaintiff requested that if sharp objects were to be exchanged, that they be placed on a flat surface, rather than exchanged hand-to-hand;

      c.     Plaintiff utilized non-prescription reading glasses while performing some of his job duties.

16.     None of the above reasonable accommodations caused Defendant an undue burden.

17.     With the above reasonable accommodations, Plaintiff successfully performed the essential functions of his job without issue until in or around May 2019.

18.     On or about May 20, 2019, Plaintiff sustained an injury to his right eye.

19.     Plaintiff underwent surgery on or about May 28, 2019 to correct the issue. Plaintiff applied for and was approved to take continuous FMLA leave for his surgery and post-operative recovery period.

20.     Plaintiff's surgery was successful and he sustained no permanent damage to his right eye or change in his overall vision.

21.     Plaintiff underwent a second, related procedure on or about July 16, 2019.

22.     Plaintiff's second procedure was also successful, and Plaintiff's Ophthalmologist cleared him to return to work without restrictions on August 1, 2019.

23.     Upon Plaintiff's return to work from FMLA qualifying leave, his direct supervisor, Coroner Anahi Ortiz, M.D., informed Plaintiff that he would no longer be permitted to conduct full autopsies. Dr. Ortiz stated that she believed Plaintiff's vision was compromised and that she was concerned he would injure himself or others.

24.     Shortly after Plaintiff's return to work after FMLA qualifying leave, in or around early September 2019, Defendant required Plaintiff to undergo an independent medical examination by a County-appointed Ophthalmologist, Jeffrey Hutchinson, DO.

25.     Defendant asked Dr. Hutchinson to determine whether Plaintiff was capable of returning to his position of Deputy Coroner, while specifically meeting the requirements of the job description supplied by Defendant.

26.     Just prior to Plaintiff's independent medical examination, Defendant changed the job description for the Deputy Coroner position. The "updated" 2019 version of Plaintiff's job description included a new explicit requirement: "Must have excellent visual acuity."

27.     Further, the updated job description provided as follows: "Must be able to perform autopsies **without assistance** and in entirety on any case that is accepted for autopsy to be performed by the coroner's office. Morgue technicians are however routinely available to assist as directed." (emphasis added)

28.     This was a change from Plaintiff's former job description that authorized the opposite: "Perform autopsies **with the assistance of the morgue technician** by providing direction… Direct the dissection, evisceration, opening of the calvarium, and direct the collection and handling of toxicology/histology specimens." (emphasis added)

29.     Dr. Hutchinson provided his report to Defendant on or about September 16, 2019. Dr. Hutchinson indicated that while Plaintiff had extremely limited vision in his left eye, he retained good vision in his right eye, both with and without his reading glasses.

30.     Dr. Hutchinson's report also stated that based on the 2019 job description provided by Defendant, he did not believe Plaintiff could perform some of the tasks set forth in the job description.

31.     The standard of practice in Defendant's office was to have technicians perform some or all of the tasks Dr. Hutchinson believed Plaintiff could not perform. Plaintiff notified Dr. Hutchinson of this during his medical examination.

32.     Dr. Hutchinson noted that Plaintiff reported no problem with delegating these tasks to technicians, as this had been his standard practice for years prior.

33.     Dr. Hutchinson stated that if delegating these tasks could be a reasonable accommodation, that would be subject to further discussion outside the area of his expertise.

34.     On or about October 17, 2019, Defendant informed Plaintiff that based upon Dr. Hutchinson's report, Defendant determined that Plaintiff was not able to perform the essential functions of his position, and that there was no reasonable accommodation that would allow him to do so.

35.     Rather than immediately terminating Plaintiff's employment, Defendant informed Plaintiff that he would be placed on "light duty," with a salary reduction of nearly $100,000.00 annually, until his condition resolved or until Defendant hired his replacement. However, Defendant knew that Plaintiff's condition was permanent.

36.     As a result of Defendant's complete failure to engage in any interactive process to discuss potential accommodations for Plaintiff—including the accommodations he successfully implemented for the previous three years—and the drastic reduction in Plaintiff's salary, Plaintiff's employment with Defendant was constructively terminated. Plaintiff began searching for a new job while Defendant solicited applicants for Plaintiff's position.

37.     On or about December 17, 2020, Plaintiff informed Defendant that he had found a new job and provided Defendant with six weeks' written notice of resignation.

38.     Defendant told Plaintiff his resignation would not be accepted, and that his last day of work would be that same day, December 17, 2019. Plaintiff was told he would be paid two weeks' vacation time, until on or about January 3, 2020, and he was instructed to finish any outstanding work remotely.  Accrued but unused vacation time is usually paid out to the employee after the termination date.

39.    Plaintiff's current job requires him to perform the same job duties he performed for Defendant without issue, and Plaintiff has continued to perform these same job duties without issue as of the date of filing of this Complaint.

40.    Defendant discriminated against Plaintiff by constructively terminating his employment, demoting him in pay and responsibilities, failing to return him to the same or similar position upon his return from leave under the FMLA, using his leave under the FMLA as a negative factor in its decisions, and failing to accommodate his disability by allowing him to safely perform his job duties with the accommodations he has successfully implemented for many years.

## COUNT I
### ADA – Disability Discrimination

41.    All of the preceding paragraphs are realleged as if fully rewritten herein.

42.    At all times relevant herein, Plaintiff was disabled within the meaning of 42 U.S.C. § 12102.

43.    Plaintiff was an otherwise qualified individual with a disability within the meaning of 42 U.S.C. § 12102.

44.    Defendant knew or had reason to know that Plaintiff suffered from a disability, regarded him as disabled, and/or was aware of Plaintiff's record of disability.

45.    Defendant constructively terminated Plaintiff's employment on the basis of his disability, perceived disability, and/or record of disability.

46.    Defendant discriminated against Plaintiff because of his disability by failing to accommodate Plaintiff; failing to engage in an interactive process; subjecting Plaintiff to an unnecessary, invasive, and unlawful medical examination; constructively terminating Plaintiff's employment; and/or otherwise discriminating against him in the terms, privileges, and conditions of his employment.

7

47.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

48.     Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT II**
**R.C. § 4112 – Disability Discrimination**

49.     All of the preceding paragraphs are realleged as if fully rewritten herein.

50.     At all times relevant herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A) of the Ohio Revised Code.

51.     At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01.

52.     Defendant knew or had reason to know that Plaintiff suffered from a disability, regarded him as disabled, and/or had a record of disability.

53.     Defendant discriminated against Plaintiff because of his disability by failing to accommodate Plaintiff; failing to engage in an interactive process; subjecting Plaintiff to an unnecessary, invasive, and unlawful medical examination; constructively terminating Plaintiff's employment; and/or otherwise discriminating against him in the terms, privileges, and conditions of his employment.

54.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious

8

emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

55.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
### ADA – Failure to Accommodate

56.     All of the preceding paragraphs are realleged as if fully rewritten herein.

57.     At all times relevant herein, Plaintiff was disabled, or regarded as disabled within the meaning of 42 U.S.C. § 12102.

58.     At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. §12102.

59.     Defendant knew or had reason to know that Plaintiff suffered from a disability.

60.     Plaintiff requested a reasonable accommodation for his disability when he requested that Defendant continue to allow him to delegate certain tasks to other employees as he had been doing for years prior; requested to use scissors (rather than a scalpel) to perform eviscerations; requested to place sharp objects on a flat surface to be exchanged instead of exchanging them hand-to-hand; and requested to use non-prescription reading glasses to perform some of his job duties.

61.     Such reasonable accommodations were possible for Defendant to provide and would not have caused Defendant undue hardship.

62.     Defendant violated 42 U.S.C. §12102 by failing to accommodate Plaintiff's disability, failing to engage in an interactive process, subjecting Plaintiff to an unnecessary medical

examination, constructively terminating Plaintiff's employment, and/or otherwise discriminating against him in the terms, privileges, and conditions of his employment.

63.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

64.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IV
## R.C. § 4112 - Failure to Accommodate

65.     All of the preceding paragraphs are realleged as if fully rewritten herein.

66.     At all times material herein, Plaintiff suffered from an impairment within the meaning of R.C. §4112.01.

67.     At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01, with or without an accommodation.

68.     Defendant knew or had reason to know that Plaintiff suffered from a disability.

69.     Plaintiff requested a reasonable accommodation for his disability when he requested that Defendant continue to allow him to delegate dissection tasks to other employees as he had been doing for years prior; requested to use scissors (rather than a scalpel) to perform eviscerations; requested to place sharp objects on a flat surface to be exchanged instead of exchanging them hand-to-hand; and requested to use non-prescription reading glasses to perform some of his job duties.

70.     Such reasonable accommodations were possible for Defendant to provide and would not have caused Defendant undue hardship.

71.     Defendant violated R.C. § 4112.02 by failing to accommodate Plaintiff's disability, failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability, subjecting Plaintiff to an unnecessary medical examination, constructively terminating his employment on the basis of his disability, and/or otherwise discriminating against him in the terms, privileges, and conditions of his employment.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

73.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT V
## FMLA – Retaliation

74.     All of the preceding paragraphs are realleged as if fully rewritten herein.

75.     Defendant was an "employer" as defined by 29 U.S.C. § 2611(4)(A).

76.     Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

77.     Plaintiff attempted to exercise and/or exercised his rights under the FMLA when he took FMLA-qualifying leave as an eligible employee.

78.     Defendant violated the FMLA by constructively terminating Plaintiff from his position, demoting Plaintiff, reducing Plaintiff's compensation, and/or reducing Plaintiff's job duties in retaliation for attempting to exercise and/or exercising his rights under the FMLA.

79.     Defendant lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

80.     Defendants' violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT VI
## FMLA – Interference

81.     All of the preceding paragraphs are realleged as if fully rewritten herein.

82.     Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

83.     Defendant was an "employer" as defined by 29 U.S.C. § 2611(4)(A).

84.     Plaintiff exercised his rights under the FMLA when he gave notice to Defendant that he needed FMLA-qualifying medical leave, provided medical documentation to support the need for such qualifying leave, and took FMLA qualifying leave.

85.     Defendant interfered with Plaintiff's FMLA rights by failing to reinstatement Plaintiff to the same or similar position upon his return from FMLA qualifying leave.

86.     Defendant interfered with Plaintiff's FMLA rights when it used the taking of FMLA leave as a negative factor in employment actions, including constructively terminating Plaintiff from his position, demoting Plaintiff, reducing Plaintiff's compensation, and/or reducing Plaintiff's job duties.

87.     Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its actions taken against Plaintiff.

88.     Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits,

statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

**WHEREFORE**, Plaintiff is entitled to and prays for the following relief:

An award of monetary damages including back pay and benefits, front pay, statutory liquidated damages, compensatory damages, expert witness fees, attorneys' fees and expenses, prejudgment and postjudgment interest, and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00, on claims under the ADA, R.C. 4112 and FMLA ; and any and all other relief which the Court deems just and appropriate.

Respectfully submitted,

*/s/ Greg R. Mansell*
_____
Greg R. Mansell (0085197)
*Greg@MansellLawLLC.com*
Carrie J. Dyer (0090539)
*Carrie@MansellLawLLC.com*
Rhiannon M. Herbert (0098737)
*Rhiannon@MansellLawLLC.com*
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

*/s/Greg R. Mansell*_____
Greg R. Mansell (0085197)